# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| GREG BLAS | ) | |
| 455 Grove Street | ) | |
| Shawnee, KS 66226 | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| vs. | ) | Division |
| | ) | |
| CASCADE HOTEL KANSAS CITY, | ) | |
| A TRIBUTE PORTFOLIO HOTEL | ) | |
| 4600 Wornall Road | ) | |
| Kansas City, MO 64112 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| COUNTRY CLUB LODGING, LLC | ) | |
| 4600 Wornall Road, Suite 400 | ) | |
| Kansas City, MO 64112 | ) | |
| | ) | |
| Defendants. | ) | |

## PETITION

COMES NOW, Plaintiff Greg Blas ("Plaintiff"), by and through counsel, and for his causes of action against Defendants Cascade Hotel Kansas City, A Tribute Portfolio Hotel, and Country Club Lodging, LLC (collectively, "Defendants"), states and alleges as follows:

1

## Parties and Jurisdiction

1. This is an employment action arising under the Employment Act of 1967, §4 (a)(1), 29 U.S.C.A. §623(A)(1), and Title VII of the Civil Rights Act of 1964.

2. Plaintiff is a citizen of the United States and resides at 455 Grove Street, Shawnee, Kansas 66226.

3. Plaintiff was employed by Defendants within the meaning of 29 USC §630(f) and 42 U.S.C. §2000e.

4. Defendant Cascade Hotel Kansas City, A Tribute Portfolio Hotel, maintains its place of business at 4600 Wornall Road, Kansas City, Missouri 64112.

5. Defendant Country Club Lodging, LLC, maintains its place of business at 4600 Wornall Road, Suite 400, Kansas City, Missouri 64112.

6. At all relevant times, Defendants employed the statutory minimum number of employees required under the Employment Act of 1967, §4 (a)(1), 29 U.S.C.A. §623(A)(1), and Title VII of the Civil Rights Act of 1964.

7. Venue is proper in United States District Court Western District pursuant to 28 U.S.C. §1331, because Defendant's claims involve federal laws.

8. This Court has subject matter jurisdiction over this action.

## Administrative Procedures

9. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Missouri Human Rights Commission ("MHRC") alleging age discrimination and retaliation identifying Defendants as respondents.

2

10. The Charge alleged discrimination and retaliation beginning on or about October 2024, culminating in Plaintiff's termination on January 21, 2025.

11. Plaintiff received a Notice of Right to Sue on November 26, 2025, from the U.S, Equal Employment Opportunity Commission and has filed this Petition within the required ninety (90) day timeframe. (Attached as Exhibit A)

**Facts Relevant to all Counts**

12. Plaintiff began working for Defendants on March 17, 2024, as the Property Manager and Director of Engineering of the Cascade Hotel at the Country Club Plaza.

13. At the time of hire, Plaintiff was 76 years old and the oldest employee working for the company.

14. Plaintiff's salary was $79,000.

15. The hotel was scheduled to open on September 30, 2023, but due to construction delays, it opened on November 8, 2023.

16. Between March 2024 and opening, Plaintiff's primary responsibility was to work with Bob Farney, Project Manager, in the dual role of Property Manager and Director of Engineering to ready the hotel for opening.

17. Plaintiff began working with the builders of the property in his role to complete the construction.

18. On or around October 17, 2023, company leadership decided to host an event for Lockton Company that included sleeping rooms and meeting/banquet space.

19. At this time, Defendants Cascade Hotel Kansas City, A Tribute Portfolio Hotel, and Country Club Lodging LLC had not obtained required occupancy approvals (including

3

Certificate of Occupancy and Fire and Life Safety Inspections), nor had they informed Marriott International of this event.

20. Plaintiff reported and voiced concerns to his supervisor, Bob Farney, and Vice President of Operations, Chris Aquino about hosting the event without required approvals.

21. After reporting the concerns to his managers and supervisors, thereafter, retaliation began and worsened over time.

22. On or about two to three months after Plaintiff began employment with Defendant, Bob Farney asked Plaintiff if he planned on hiring an assistant in case the Plaintiff left.

23. Plaintiff understood from this conversation that Bob Farney was referring to Plaintiff age as the reason for possibly leaving.

24. Bob Farney did not allow Plaintiff to open accounts with vendors, like HVAC, after Plaintiff repeatedly requested this as part of his duties.

25. Defendants named Tad Stricker the general manager of the hotel on or about November of 2024.

26. Tad Stricker refused to work closely with Plaintiff as per Plaintiff's previous experience with general managers.

27. Plaintiff voiced concerns he observed as part of his role to Tad Stricker, and these concerns were consistently ignored and not given priority.

28. Plaintiff provided his input to Tad Stricker regarding operation of the hotel and Mr. Stricker did not accept any recommendations from Plaintiff. Instead, Mr. Stricker replied curtly to every recommendation.

4

29. Plaintiff reasonably believed Defendants' actions were retaliatory, as his recommendations and observations were ignored and dismissed. This resulted in the Plaintiff not being able to effectively do the functions of his position.

30. The standard practice for Defendants was to always put an employee on formal or informal performance improvement plan before terminating an employee.

31. Plaintiff never received written discipline or a performance improvement plan.

32. Immediately prior to Plaintiff's termination, Plaintiff found an organization document that listed a different name next to his position. This name is the person that was hired to replace him after his termination.

33. On January 21, 2025, Defendants terminated Plaintiff's employment without prior formal or informal discipline as outlined in the company handbook or as was the practice of the Defendants.

34. Defendant claimed that Plaintiff's position was being eliminated.

35. Defendant manipulated Plaintiff into signing a separation agreement to try to bar him from seeking any legal claims. This agreement was only provided one (1) day to review it and sign it in direct violation of the Older Workers Benefit Protection Act of 1990 that states that individuals should be given a period of at least 21 days within which to consider the agreement or it is waived.

36. During Plaintiff's tenure, corporate HR required completion of up to three disciplinary forms and/or a Personal Improvement Plan before terminating employees (absent zero-tolerance violations).

37. Defendants nevertheless invoked at-will termination for Plaintiff without following this practice and provided no explanation.

5

38. Defendants replaced Plaintiff, in the exact job title, within two weeks of Plaintiff's termination.

39. Plaintiff experienced a longstanding campaign of retaliation after voicing concerns about the illegal early opening designed to set up his termination and replacement by a younger, less expensive Property Manager and Director of Engineering.

40. Despite the retaliation, Plaintiff diligently fulfilled his duties and additional assigned tasks.

**COUNT I Age Discrimination in Violation of the Employment Act of 1967, §4 (a)(1), 29 U.S.C.A. §623(A)(1)**

33. Plaintiff re-alleges and incorporates all paragraphs of this Petition as if fully set forth herein.

34. Plaintiff is within the protected class based on age and was 76 years old during the relevant period.

35. Plaintiff was qualified for and performing the essential functions of the Property Manager and Director of Engineering position.

36. Defendants terminated Plaintiff on January 21, 2025, and replaced him with a younger candidate, at a lower salary.

37. Age was a motivating factor in Defendants' decision to terminate Plaintiff and replace him with a younger, less expensive employee.

38. As a direct and proximate result, Plaintiff suffered lost wages and benefits and other damages.

WHEREFORE, Plaintiff requests judgment against Defendants for back pay, front pay, lost benefits, compensatory damages, punitive damages as allowed by law, reasonable

6

attorneys' fees and costs, pre- and post-judgment interest, and all other legal and equitable relief as the Court deems just and proper.

### COUNT II Retaliation in Violation of the
### Title VII of the Civil Rights Act of 1964.

39. Plaintiff re-alleges and incorporates all paragraphs of this Petition as if fully set forth herein.

40. Plaintiff engaged in protected activity by voicing concerns to company leadership regarding hosting an illegal event without required governmental approvals and related legal compliance issues.

41. Following his protected complaints, Defendants subjected Plaintiff to materially adverse actions, including withdrawal of support, refusal to engage him in decision making, undermining his authority, and escalating harassment.

42. Defendants terminated Plaintiff on September 25, 2024.

43. The adverse actions and termination were causally connected to Plaintiff's protected activity.

44. As a direct and proximate result, Plaintiff suffered lost wages and benefits, emotional distress, and other damages.

WHEREFORE, Plaintiff requests judgment against Defendants for back pay, front pay, lost benefits, compensatory damages, punitive damages as allowed by law, reasonable attorneys' fees and costs, pre- and post-judgment interest, and all other legal and equitable relief as the Court deems just and proper.

7

**<u>Demand for Jury Trial</u>**

Plaintiff demands a trial by jury in the United States District Court Western District on all counts and allegations of wrongful conduct alleged in this Petition.

Respectfully submitted,

WITHERS, BRANT, IGOE & MULLENNIX, P.C.

By:  /s/ Rodney A. Ames
     Rodney A. Ames, MO Bar No. 44865
     Nichole L. Stewart, MO Bar No. 76326
     rames@withersbrant.com
     nstewart@withersbrant.com
     Two South Main
     Liberty, Missouri 64068
     (816) 781-4788 – Phone
     (816) 792-2807 – Facsimile
     **Attorneys for Plaintiff**

8